```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
EMPIRE FIRE AND MARINE INSURANCE        :
COMPANY,                                :
                                        :      REPORT AND
                    Plaintiff,          :      RECOMMENDATION
                                        :
        -against-                       :      18-CV-3422 (KAM) (PK)
                                        :
KELVIN ESTRELLA, JOSE GUEVARA,          :
CESAR ROJAS and YOCASTA POLANCO         :
a/k/a YORASTA POLANCO,                  :
                                        :
                    Defendants.         :
---------------------------------------------------------------- X
```

**Peggy Kuo, United States Magistrate Judge:**

Plaintiff Empire Fire and Marine Insurance Company ("Plaintiff") brought this action against Kelvin Estrella, Jose Guevara, Cesar Rojas, and Yocasta Polanco a/k/a Yorasta Polanco (collectively, "Defendants"), alleging breach of contract against Estrella and seeking a declaratory judgment that it does not have a duty to defend or indemnify Estrella in two underlying state court actions arising from an alleged motor vehicle accident in which Estrella is a defendant.

Before the Court on referral from the Honorable Kiyo A. Matsumoto is Plaintiff's Motion for Default Judgment against Defendants (the "Motion") (Dkt. 14; Referral Order dated 4/1/2019). For the reasons stated herein, the undersigned respectfully recommends that the Motion be granted.

## FACTUAL BACKGROUND

The following facts are taken from the Complaint, unless otherwise stated, and are accepted as true for the purposes of the Motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

Plaintiff issued the Empire Commercial Lines Policy, bearing policy number RSI552807-03 (the "Policy") to Enterprise Holdings, Inc. ("Enterprise") to cover the period from September 1, 2014 to September 1, 2015. (Compl., ¶ 4, Dkt. 1; Affidavit of Sue Rudy, dated November 14, 2018

1

("Rudy Aff."), ¶ 4, Dkt. 16; Ex. 1, Dkt. 16-1.)  The Policy includes Supplemental Rental Liability Insurance for New York, providing coverage once the minimum financial responsibility limits under New York's no-fault insurance law are met, up to $1 million per accident.  (Compl., ¶ 3, 5; Rudy Aff., ¶ 22.)  The Policy kicks in after $50,000 for bodily injuries and $10,000 for property damage per accident.  (Compl., ¶ 36; Rudy Aff., ¶ 24; Ex. 1, at p. 65.)

Estrella rented a car from Enterprise[1] around June 22, 2015 and paid for Supplemental Liability Protection ("SLP"), thereby qualifying him as an insured under the Policy.  (Compl., ¶ 7; Rudy Aff., ¶ 26; Exs. 4, 14.)

The Policy contains a provision under which the insured must cooperate with Plaintiff in its investigation and defense of any litigation arising from a motor vehicle accident.  (Compl., ¶ 37; Rudy Aff., ¶ 25; Ex. 1, at pp. 92-93.)  The Policy also contains an amendment providing that the insured must submit to examinations under oath at Plaintiff's request in connection with any litigation.  (Compl., ¶ 38, Rudy Aff., Ex. 1, at pp. 92-93.)

In November 2015, Guevara, Rojas, and Polanco brought two lawsuits against Estrella in the Supreme Court of New York, County of Bronx.  They alleged that on June 25, 2015, the Enterprise rental car which Estrella was driving collided with a car driven by Polanco, in which Guevara and Rojas were passengers.  (Compl., ¶¶ 2, 21-22, 29-30; Rudy Aff., ¶ 3.)  The lawsuits are captioned *Jose Guevara v. Yorasta Polanco and Kelvin Estrella*, Index No. 26408/15E (the "Guevara Action"), and *Cesar Rojas and Yocasta Polanco v. Kelvin Estella and Enterprise Holdings, Inc., d/b/a Enterprise Rent-a-Car,* Index No. 304688/2015 (the "Rojas/Polanco Action") (together, the "Underlying Actions."). (Compl., ¶¶ 1, 18, 26; Rudy Aff., ¶¶ 1, 6, 8, 14, 16; Exs. 2-3.)

---

[1] An affiliate of Enterprise Holdings, Inc., ELRAC LLC, is the legal entity that owns the subject rental vehicle and is the entity that rented the vehicle to Estrella.  (Rudy Aff., Ex. 4.)  Reference to "Enterprise" includes ELRAC LLC.

2

Pursuant to New York's minimum financial requirements, Enterprise retained defense counsel for Estrella in the Underlying Actions. (Compl., ¶¶ 7, 39; Rudy Aff., ¶¶ 13, 21, 27.)

Plaintiff has made numerous efforts to reach Estrella regarding his defense in the Underlying Actions, but Estrella has not responded. (Compl., ¶¶ 8, 25, 33; Rudy Aff., ¶¶ 27-28.) Initial attempts to contact Estrella using the address and telephone numbers he provided on his rental agreement failed. (Compl., ¶ 40; Rudy Aff., ¶ 28.) As a result, Plaintiff's claims handler retained the law firm White Fleischner and Fino, LLP ("White Fleischner") to assist in contacting him. (*Id.*)

On July 15, 2016, August 12, 2016, October 4, 2016, November 8, 2016, and February 3, 2017, White Fleischner sent letters to both Estrella's address listed on his rental agreement, and a P.O. Box address in Ohio identified as Estrella's. (Compl., ¶¶ 41, 49, 53, 59, 68; Rudy Aff., ¶¶ 29-58; Exs. 5, 7-8, 10, 13.) The letters were sent via certified and regular mail, and contained notices scheduling Estrella's examination under oath. (Compl., ¶¶ 42, 50, 53, 60, 69; Rudy Aff., Exs. 5, 7-8, 10, 13.) The letters warned Estrella that if he failed to appear for his examination under oath and produce requested documents, Plaintiff would construe that as a breach of the Policy, which might forfeit Estrella's rights thereunder. (Compl., ¶¶ 43, 51, 54, 61, 70.) Receipts indicate that someone received and signed for four of the five letters sent to the Ohio address and three of the five letters sent to the New York address. (Compl., ¶¶ 44, 52, 55, 71; Rudy Aff., ¶¶ 39, 42, 58; Exs. 5, 7-8, 10.) Four examinations under oath were scheduled, and Estrella failed to appear at any of them. (Compl., ¶¶ 48, 58, 66, 77; Rudy Aff., ¶¶ 35, 45, 53, 64; Exs. 6, 9, 12, 15.) Estrella also failed to answer White Fleischner's telephone calls made to the primary and secondary numbers he provided in his rental agreement. (Compl., ¶¶ 45, 56, 64, 75; Rudy Aff., ¶¶ 32-33, 43, 51, 62; Exs. 12, 15.) On several occasions, the person who answered the phone indicated that there was no one named Kelvin Estrella at that number, that it was the "wrong number," or that he was "not Kelvin Estrella, and he only speaks Chinese." (Compl., ¶¶ 45, 46, 56, 64; Rudy Aff., ¶¶ 32, 43, 51, 62; Exs. 6, 12.)

3

Plaintiff also hired three private investigators, who performed a "skip-trace" search on Estrella, which confirmed the address he had given on the rental agreement (including an apartment number, which Estrella had failed to provide) and revealed an active driver's license for Estrella at that address, as well as New York voter registration records at that address. (Compl., ¶ 79; Rudy Aff., ¶ 66; Ex. 16.) An investigator telephoned Estrella in Spanish and in English, and visited his residence on at least four occasions. (Compl., ¶¶ 62-63, 67, 78-88; Rudy Aff., ¶¶ 50, 54, 68, 71-75; Exs. 11-12, 17-18.) One investigator met Estrella's brother at the residence, who confirmed that he lived there. (Compl., ¶ 67; Rudy Aff., ¶ 54; Ex. 11.) Another investigator met the building superintendent, who stated that Estrella no longer resided there. (Compl., ¶ 81; Rudy Aff., ¶ 68.) That investigator nevertheless affixed a letter to the door of the apartment, asking Estrella to contact him. (*Id.*) No one did. On another occasion, a Spanish-speaking investigator spoke with someone at one of Estrella's phone numbers, who identified himself as Estrella and confirmed his address. (Compl., ¶ 83; Rudy Aff., ¶ 70; Ex. 18.) However, when this investigator visited that address, an unidentified male answered the door and claimed that Estrella did not live there, and that he would not accept any documents on Estrella's behalf. (Compl., ¶¶ 84-88; Rudy Aff., ¶¶ 71-75; Ex. 18.)

Plaintiff also sent its own letter to Estrella on March 2, 2017, via certified mail, return receipt requested, and regular mail, stating that it was reserving its rights under the Policy, and "[b]ased on the information we have received, we question the applicability of coverage to you for any benefits under our policy." (Compl., ¶ 73; Rudy Aff., Ex. 14.) The letter noted that Estrella had "failed to cooperate in the investigation and defense of this matter" and as a result, "there may be no Supplemental Liability Coverage for this accident." (Compl., ¶ 74; Rudy Aff., Ex. 14.) After receiving a finalized report from its third investigator in February 2018, Plaintiff retained counsel in order to conduct a factual and legal analysis before ultimately filing this action in June 2018. (Rudy Aff., Ex. 18; Pl. Ltr., Dkt. 32.)

4

## PROCEDURAL BACKGROUND

Plaintiff filed the Complaint on June 12, 2018, seeking declaratory judgment. (Dkt. 1.) Estrella was served on June 18, 2018. (Dkt. 6.) Guevara was served on June 28, 2018. (Dkt. 5.) Polanco was served on July 27, 2018. (Dkt. 8.) Rojas was served on August 13, 2018. (Dkt. 9.) After no defendant responded to the Complaint, Plaintiff requested and the Clerk of the Court entered default as to all Defendants on September 25, 2018. (Dkts. 10-13.) Plaintiff sent letters to counsel for Estrella, Guevara, Rojas, and Polanco in the Underlying Actions on September 18 and 20, 2018, enclosing the Summons and Complaint and informing them that Plaintiff had requested certificates of default and would move for default judgment. (Dkt. 15-2.)

Plaintiff filed the Motion on November 15, 2018. (Dkt. 14-19). On April 18, 2019, Rojas and Polanco filed a letter asking the Court to deny the Motion on the basis that they had never been personally served and were unaware of this action. (Dkt. 20.) The Court directed Rojas and Polanco to file a motion to vacate, which they did on May 3, 2019. (Motion to Vacate Clerk's Entry of Default, "Motion to Vacate," Dkt. 23.) Plaintiff filed its opposition on May 10, 2019. (Dkt. 26.)

A Hearing and Inquest on the Motion and the Motion to Vacate were held on August 6, 2019. The undersigned denied the Motion to Vacate on the record because Rojas and Polanco failed to articulate a meritorious defense to this action for declaratory judgment based on Estrella's breach of contract. However, Rojas and Polanco were given leave to file a motion for reconsideration by September 9, 2019 if they learned new facts at Estrella's deposition in the Underlying Actions, then scheduled for August 22, 2019, that would support a meritorious defense. (*See* Minute Entry dated August 7, 2019; Tr. at 31, Dkt. 29.)

On August 30, 2019, Rojas and Polanco reported that the deposition of Estrella did not occur on August 22, 2019 because he did not appear, and that it was therefore rescheduled to October 4, 2019. (Defs. Ltr., Dkt. 30.)

5

# DISCUSSION

## I. Legal Standard for Default Judgment

In order to grant a default judgment, a court must first ensure that Plaintiff took all the required procedural steps in moving for default judgment, including providing proper notice to Defendants of the Motion. Local Civ. R. 55.2(c). Although a "default judgment is ordinarily justified where a defendant fails to respond to the complaint," a court must nevertheless determine whether the allegations establish liability as a matter of law. *SEC v. Anticevic*, No. 05-CV-6991 (KMW), 2009 WL 4250508, at *2 (S.D.N.Y. Nov. 30, 2009); *see also Finkel*, 577 F.3d at 84. Even after the entry of default, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Trs. of the Plumbers Local Union No. 1 Welfare Fund. v. Philip Gen. Constr.*, No. 05-CV-1665 (NG) (RML), 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (quoting *In re Wildfire Ctr., Inc.*, 102 B.R. 321, 325 (E.D.N.Y 1989)).

## II. Jurisdiction

### A. Subject Matter Jurisdiction

Plaintiff seeks a declaratory judgment in this action pursuant to 28 U.S.C. § 2201. (Compl., ¶¶ 9, 15.) Because the Declaratory Judgment Act does not by itself confer subject matter jurisdiction on the Court, there must be an independent basis for federal jurisdiction. *See Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006). In Declaratory Judgment actions based on diversity jurisdiction, "the amount in controversy is measured by the value of the object of the litigation." *Am. Safety Cas. Ins. Co. v. 385 Onderdonk Ave., LLC*, 124 F. Supp. 3d 237, 241 (E.D.N.Y. 2015) (quoting *Correspondent Servs.*, 442 F.3d at 769) (internal quotations omitted). The object of the litigation depends on Plaintiff's insurance coverage obligations. *Id.*; *see also Lighton Indus., Inc. v. Allied World Nat'l Assurance Co.*, 348 F. Supp. 3d 167, 181 (E.D.N.Y. 2018);

6

*Certified Multi-media Sols., Ltd. v. Preferred Contractors Ins. Co. Risk Retention Grp., LLC*, 150 F. Supp. 3d 228, 239 (E.D.N.Y. 2015), aff'd, 674 F. App'x 45 (2d Cir. 2017). The amount in controversy is measured as of the date of the Complaint. *See Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003). Once jurisdiction has attached, it cannot be ousted by subsequent events. *Id.*

Here, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, the federal diversity statute, because there is diversity of citizenship and the matter in controversy exceeds $75,000. (Compl. ¶ 15.) *See* 28 U.S.C. § 1332(a)(1). The object of the litigation is Plaintiff's obligations under the Policy, which allow for up to $1 million in coverage beyond the minimum coverage requirements in New York, or $60,000 for bodily injuries and property damages per accident. (Compl., ¶¶ 3, 36; Rudy Aff., ¶ 24; Ex. 1.) As of the date of the Complaint, Guevara alone sought over $1.2 million in damages, and Rojas and Polanco have now "collectively" sought $75,000 in the Underlying Actions, bringing the total claimed damages to approximately $1.3 million. (Coughlin Supp. Aff., Ex. F, ¶ 14, Dkt. 31; Dkt. 30.)

Additionally, Plaintiff met the burden of establishing diversity of citizenship as to all Defendants. Plaintiff is a Nebraska insurance corporation with a principal place of business in Illinois. (Compl., ¶ 10.) Estrella, Guevara, and Polanco are individuals who reside in New York. (*Id.*, ¶¶ 11, 12, 14.) Rojas is an individual who resides in New Jersey. (*Id.*, ¶ 13.)

### B. Personal Jurisdiction and Service

"[A] court may not properly enter a default judgment until it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process." *Lopez v. Yossi's Heimishe Bakery Inc.*, No. 13-CV-5050 (FB) (CLP), 2015 WL 1469619, at *4 (E.D.N.Y. Mar. 30, 2015). An individual may be served according to state law where service is made. Fed. R. Civ. P. 4(e)(1).

7

Estrella was properly served with the Summons and Complaint in accordance with the service requirements of the New York Civil Practice Law & Rules ("C.P.L.R."), namely, on June 18, 2018, Christian Estrella, Estrella's brother and a person of suitable age and discretion, accepted the Summons and Complaint at Estrella's actual dwelling place or usual place of abode. (Dkt. 6.) *See* C.P.L.R. 308(2) (McKinney, 2019). Additionally, the Summons and Complaint were mailed to Estrella at the same address. *See id.* Guevara was properly served with the Summons and Complaint through service on a person of suitable age and discretion at his actual dwelling place or usual place of abode. (Dkt. 5.) Thereafter, a copy of the Summons and Complaint was mailed to Guevara at the same address. *See id.*; C.P.L.R. 308(2). Polanco was personally served at her actual dwelling place or usual place of abode. (Dkt. 8.) C.P.L.R. 308(1). Rojas was properly served via "nail-and-mail" service, after the process server attempted to serve Rojas at his actual dwelling place or usual place of abode five times, without success. (Dkt. 9.) A copy of the Summons and Complaint was then affixed to the door of Rojas' address, and also mailed to Rojas at the same address. C.P.L.R. 308(4); *see MJC Supply, LLC v. Powis*, No. 18-CV-1539 (PKC) (RER), 2019 WL 1429625, at *4 (E.D.N.Y. Mar. 29, 2019) (at least three attempts at in-person service, preferably on non-consecutive days and during non-business hours, generally constitutes "due diligence" under C.P.L.R. 308(4)).

**III.** **Procedural Compliance**

Plaintiff filed the following documents in support of the Motion: Notice of Motion (Dkt. 14); Memorandum of Law in Support of Plaintiff's Motion for Default Judgment (Dkt. 17); declarations in support (Dkts. 15, 16); the Clerk's Certificates of Default (Dkts. 12, 13); the Complaint (Dkt. 15-1); a proposed order (Dkt. 18); and proof of mailing of the Motion to the defaulting parties (Dkt. 19.) Proof of service of the Complaint was filed on the docket (Dkts. 5, 6, 8, 9.) These documents are in compliance with Local Civil Rules 7.1 and 55.2.

8

### IV. Analysis

#### A. *Default Judgment Against Estrella*

##### 1. *Estrella's Breach of the Policy*

Plaintiff alleges that Estrella is liable for breach of contract by failing to abide by the Policy's cooperation provisions. Under New York law, insurance policies are contracts and are thus interpreted according to principles of contract interpretation. *See Frazer Exton Dev., L.P. v. Kemper Envtl., Ltd.*, 153 F. App'x 31, 32–33 (2d Cir. 2005); *In re Estates of Covert*, 761 N.E.2d 571, 576 (2001). To support a claim of breach of contract under New York law, there must be an agreement, adequate performance by Plaintiff, breach by Defendant, and damages. *See, e.g., Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011). In lieu of damages, an insurer may disclaim liability under the insurance policy and seek declaratory judgment that it has no duty to defend under the policy. *See, e.g., SCW W. LLC v. Westport Ins. Corp.*, 856 F. Supp. 2d 514, 522 (E.D.N.Y. 2012).

There is no doubt that Estrella's rental agreement constituted an agreement between himself and Enterprise. (Compl., ¶¶ 3-6; Rudy Aff., Ex. 4.) Estrella purchased Supplemental Liability Protection (listed as "SLP" on the agreement), which bound Estrella and Plaintiff to the terms of the Policy. (*Id.*) Under the Policy, Estrella is required to cooperate with Plaintiff in his defense in the Underlying Actions. (Rudy Aff., Ex. 4, at pp. 92-93.) Plaintiff has sought to perform under the Policy by providing Estrella a defense and investigating the alleged car accident in the Underlying Actions. (Compl., ¶¶ 39-91.) As explained more fully below, Estrella has breached the Policy, entitling Plaintiff to relief in the form of a declaratory judgment disclaiming its duty to defend Estrella or indemnify him in the Underlying Actions.

Under New York law, the insured's failure to cooperate with the insurer in the defense of an action is a breach of a condition precedent under the policy, which bars recovery under it. *See Dornoch Ltd. ex rel. Underwriting Members of Lloyd's Syndicate 1209 v. PBM Holdings, Inc.*, 666 F. Supp. 2d

9

366, 372–73 (S.D.N.Y. 2009). In order to effectively deny insurance coverage based on the insured's lack of cooperation, there is a heavy burden on the insurer to demonstrate by a preponderance of the evidence that: (1) it acted diligently in seeking to obtain the insured's cooperation; (2) its efforts were reasonably calculated to obtain the insured's cooperation; and (3) the insured's attitude after his cooperation was sought was one of "willful and avowed obstruction." *Thrasher v. U. S. Liab. Ins. Co.*, 225 N.E.2d 503, 508 (1967); *see also SCW W. LLC*, 856 F. Supp. 2d at 522; *Country-Wide Ins. Co. v. Preferred Trucking Servs. Corp.*, 6 N.E.3d 578, 582 (2014). The facts must support a "practically compelling" inference that the insured's failure to cooperate was deliberate. *Country-Wide Ins. Co. v. Henderson*, 856 N.Y.S.2d 184, 186 (2d Dep't 2008); *Liberty Mut. Ins. Co. v. Roland-Staine*, 802 N.Y.S.2d 6, 9 (1st Dep't 2005).

Plaintiff has met its heavy burden of proving Estrella's non-compliance with the Policy, such that it may deny insurance coverage. Specifically, over approximately one year, Plaintiff, through White Fleischner, sent letters to Estrella, via certified and regular mail, at least seven of which were signed for. (Compl., ¶¶ 41-77; Rudy Aff., ¶¶ 29-58; Exs. 5, 7-8, 10, 13.) The letters warned Estrella that his failure to appear for the scheduled examinations under oath would be considered by Plaintiff to be a breach of the Policy, which could cause forfeiture of his right to receive coverage under it. (Compl., ¶¶ 43, 51, 54, 61; Rudy Aff., Exs. 5, 7-8, 10, 13.) White Fleischner also made numerous attempts to contact Estrella over the telephone, using two numbers Estrella provided on his rental application. (Compl., ¶¶ 45, 46, 56, 64, 75.)

In addition to White Fleischner's attempts to reach Estrella, Plaintiff retained three private investigators, at least one of whom spoke Spanish, who verified Estrella's address as the one he provided on his rental agreement (with the addition of a unit number, which Estrella had failed to provide Enterprise), called and spoke with someone who claimed he was Estrella, and personally visited his apartment on several occasions, where the investigators were first told by Estrella's

10

brother that Estrella *did* live there, and later, by a superintendent and an unnamed resident of the household, that he did not. (Compl., ¶¶ 62, 67, 78-81, 82-88; Rudy Aff., ¶¶ 49-50, 54, 65-75; Exs. 11, 16, 17, 18.) *See, e.g., Columbus McKinnon Corp. v. Travelers Indem. Co.*, 367 F. Supp. 3d 123, 152-53 (S.D.N.Y. 2018) (written correspondence, numerous telephone calls, and visits to the insured's home demonstrate diligence).

Thus, Plaintiff has demonstrated that it acted diligently to obtain Estrella's cooperation and that its efforts were reasonably calculated to obtain his cooperation.

In addition, Plaintiff has proven that Estrella has engaged in a pattern of non-compliance with Plaintiff's attempts to obtain his cooperation and that his attitude rose to the level of "willful and avowed obstruction." Estrella failed to appear for four scheduled examinations under oath. (Compl., ¶¶ 48, 58, 66, 77.) *See Wingates, LLC v. Commonwealth Ins. Co. of Am.*, 21 F. Supp. 3d 206, 218 (E.D.N.Y. 2014), aff'd, 626 F. App'x 316 (2d Cir. 2015) (insured's failure to submit to examination under oath constitutes an absolute defense to a claim under the insurance policy). He also failed to acknowledge or respond to White Fleischner's telephone calls made to his primary and secondary numbers. (Compl., ¶¶ 45, 56, 64, 75; Rudy Aff., ¶¶ 32-33, 43, 51, 62; Exs. 12, 15.) Plaintiff sent its own letter to Estrella in March of 2017, but received no response. (Rudy Aff., ¶¶ 59-61, 77.) All efforts to locate Estrella led to the same building address he listed on the June 2015 rental agreement or the P.O. Box address in Ohio. Estrella did not respond to any correspondence sent to those addresses. Estrella has also failed to appear for his deposition in the Underlying Actions. (Dkt. 30.) *See, e.g., SCW W. LLC*, 856 F. Supp. 2d at 528-29 ("willful noncooperation has been found to exist when there is a pattern of noncompliance for which no reasonable excuse can be offered, or where the failure to cooperate is persistent.") (internal quotations and citations omitted).

11

Accordingly, the undersigned finds by a preponderance of the evidence that Estrella breached the Policy by failing to cooperate, thereby allowing Plaintiff to disclaim its duty to defend and indemnify him under the Policy.

### 2. *Plaintiff's Compliance with New York Insurance Law Section 3420(d)(2)*

Pursuant to New York Insurance Law Section 3420(d)(2), an insurer must provide an insured "written notice as soon as is reasonably possible" of its intention to disclaim liability for bodily injury arising out of a motor vehicle accident. N.Y. INS. LAW § 3420(d)(2); *United States Underwriters Ins. Co. v. Image By J & K, LLC*, 335 F. Supp. 3d 321, 341-42 (E.D.N.Y. 2018). Commencement of a declaratory judgment action constitutes sufficient "written notice" of a disclaimer under Section 3420(d)(2). *See, e.g., United Fin. Cas. Co. v. Country-Wide Ins. Co.*, No. 18-3022, 2019 WL 2724267, at *3 (2d Cir. July 1, 2019) (citing *Generali-U.S. Branch v. Rothschild*, 295 744 N.Y.S.2d 159, 161 (1st Dep't 2002)).

"[T]imeliness of an insurer's disclaimer is measured from the point in time when the insurer first learns of the grounds for disclaimer. . ." *First Fin. Ins. Co. v. Jetco Contracting Corp.*, 801 N.E.2d 835, 838-39 (2003) (internal quotations omitted). Timely disclaimer protects the insured from expending resources on its defense when coverage will ultimately be denied. *Image by J & K, LLC*, 335 F. Supp. 3d at 342. The insurer's explanation for a delay in disclaiming coverage is insufficient as a matter of law where "the basis for denying coverage was or should have been readily apparent before the onset of the delay." *Id.* The insurer bears the burden of explaining any delay in providing the disclaimer, but delay may be reasonable where necessary to allow the insurer to conduct a "prompt, thorough, and diligent investigation of the claim." *Id.* Delay in disclaiming coverage based on the insured's non-cooperation may be justifiable where the insurer can show that its delay was based upon diligent attempts to obtain the insured's cooperation, particularly where the insured's cooperation is ambiguous. *Preferred Trucking*, 6 N.E.3d at 581-82.

12

Plaintiff has complied with Section 3420(d)(2). In February 2018, after it received its final investigative report, it engaged outside counsel, undertook an analysis that Estrella's failure to cooperate violated the Policy, and filed this action in June 2018, thereby providing Estrella and Guevara, Rojas, and Polanco unequivocal notice of its intention to disclaim its responsibility to indemnify Estrella in the Underlying Actions. (Rudy Aff., Ex. 18; Dkt. 32.) Given Plaintiff's duty to conduct a diligent analysis of Estrella's non-cooperation, a delay of four months between receiving the investigator's report and filing this action is reasonable.

### B. Default Judgment Against Guevara, Rojas, and Polanco

Plaintiff brought this action against Guevara, Rojas, and Polanco as alleged injured parties in the Underlying Actions who have an interest in Plaintiff's defense and indemnification of Estrella. (Compl., ¶¶ 1, 17.) Guevara has alleged damages of $1.2 million and Rojas and Polanco have alleged damages of at least $75,000 in the Underlying Actions, which would be covered in part by the Policy if Estrella were to be found liable. (Coughlin Supp. Aff., Exs. F, G; Dkt. 30.)

Plaintiff has demonstrated that it properly served the Summons and Complaint on Guevara and notified him of the action, including by letter to his counsel in the Underlying Actions. (Dkts. 5, 15-2, 19.) Guevara has failed to appear. Accordingly, the undersigned finds that Guevara was properly named as an interested party and recommends that a default judgment should be entered against him.

Rojas and Polanco failed to timely appear in this action. They did appear through counsel after default was entered, and moved to vacate the default on the basis that they were not properly served. (Dkt. 23.) The Court denied the Motion to Vacate at the conclusion of the Hearing and Inquest, finding that they failed to raise a meritorious defense. (Minute Entry dated 8/7/2019.)

In determining whether to enter a default judgment, the Court may apply the same factors that are used to analyze a motion to vacate entry of a default. *See, e.g., Boards of Trustees of Ins.,*

13

*Annuity, & Apprenticeship Training Funds of Sheetmetal Workers' Int'l Ass'n, Local Union No. 137 v. Frank Torrone & Sons, Inc.*, No. 12-CV-3363 (KAM) (VMS), 2014 WL 674098, at *4 (E.D.N.Y. Feb. 3, 2014); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001). The Second Circuit has "established three criteria that must be assessed in order to decide whether to relieve a party from default or from a default judgment. These widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; (3) whether a meritorious defense is presented." *Enron Oil Corp.*, 10 F.3d at 96; *see also Bricklayers & Allied Craftworkers Local 2 Pension Fund ex rel. O'Sick v. Moulton Masonry & Construction, LLC*, 779 F.3d 182, 186 (2d Cir. 2015).

In order to present a meritorious defense, a defendant "must present some evidence beyond conclusory denials to support his defense. . . [t]he test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil Corp.*, 10 F.3d at 98. Some underlying facts must be presented in order to establish a meritorious defense, such that the outcome of the action might be different than if the entry of default is allowed to stand. *See Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320-21 (2d Cir. 1986); *In re Martin-Trigona*, 763 F.2d 503, 505 n.2 (2d Cir. 1985).

Rojas' and Polanco's sole argument against a default judgment was improper service of the Complaint, which is relevant to whether their conduct in this action was willful. However, even if the Court were to find that Rojas and Polanco did not act willfully in failing to respond timely to the Complaint, they have proffered no factual or legal basis that constitutes a defense against this action, which is for breach of contract by Estrella, due to his failure to cooperate with Plaintiff's efforts to investigate and defend against the Underlying Actions on his behalf. (Defs. Mem., Dkt. 25.) Denying a default judgment against them would prejudice Plaintiff in that there would be delay in

14

this case, which ultimately Rojas and Polanco would not be able to win, given their inability to articulate, much less present, a meritorious defense.

Accordingly, the undersigned respectfully recommends that default judgment be entered against Rojas and Polanco, as properly named interested parties.

### C. Declaratory Judgment Is Appropriate

Plaintiff requests that the Court declare that it does not have a duty to defend or indemnify Estrella in the Underlying Actions. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, in an "actual controversy within its jurisdiction," the Court "may declare the rights and legal relations" of a party seeking a declaration. *Id.* "Actual controversy" has been interpreted to mean "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy any reality to warrant the issuance of a declaratory judgment." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969). Declaratory judgments should resolve a "real question of conflicting legal interests." *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992). Insurance coverage cases, the Second Circuit has emphasized, provide "the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real." *Id.* (internal quotations omitted). The focus should be on whether there is a practical likelihood that the contingency will occur. *Id.; see also Image by J & K, LLC*, 335 F. Supp. 3d at 345-46 n.17.

Here, the contingency is Plaintiff's duty to defend and indemnify Estrella in the Underlying Actions, which have already been brought by Rojas, Polanco, and Guevara, and which potentially subject Estrella to over $1.2 million in damages (for which Plaintiff would be obliged to indemnify him). The undersigned finds that the indemnification claim is ripe, as there is a "practical likelihood" that Plaintiff will be required to indemnify Estrella for damages in excess of $60,000 in the Underlying Actions. *Id.* Whether Plaintiff has a duty to indemnify Estrella does not rely on any

15

facts to be determined in the Underlying Actions. Accordingly, the undersigned recommends that declaratory judgment be entered in Plaintiff's favor.

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that Plaintiff's Motion for Default Judgment, filed at [14], be granted as to all Defendants, and that the Court declare that Plaintiff does not have a duty to defend or indemnify Estrella in the Underlying Actions, or any other action or claim arising out of the alleged motor vehicle accident involving Defendants that occurred on June 25, 2015.

Plaintiff is directed to serve this Report and Recommendation on Defendants forthwith and file proof of service on the docket by September 18, 2019.

Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any just objection waives the right to further judicial review of this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         September 13, 2019